**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **TODD JEFFREY GATES,** | ) | |
| **AIS #00275350,** | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 15-00246-CG-N** |
| | ) | |
| **LEEPOSEY DANIELS,** | ) | |
| **Respondent.** | ) | |

## REPORT AND RECOMMENDATION

Petitioner Todd Jeffrey Gates, an Alabama prisoner proceeding *pro se*, has

filed a Superseding Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Doc.

4).[1]   The Respondent, through the Office of the Attorney General of the State of

Alabama, has timely filed an Answer (Doc. 9) to the petition, and Gates has timely

filed a reply (Doc. 11) to the Answer.   Gates's habeas petition is now under

submission (*see* Doc. 10) and is ripe for disposition.

Under S.D. Ala. GenLR 72.2(b), the petition has been referred to the

undersigned Magistrate Judge for entry of a recommendation as to the appropriate

disposition, in accordance with 28 U.S.C. § 636(b)(1)(B)-(C), Rule 8(b) of the Rules

---

[1] Because Gates's initial petition (Doc. 1) was on an outdated form, he was ordered to file a
new petition on the Court's current form.   (*See* Doc. 3).   Gates was expressly informed:
"Petitioner's new petition will supersede his original petition; therefore, Petitioner shall not
rely upon his original petition."   (*Id.*).   Gates timely complied with that order, resulting in
the instant operative habeas petition (Doc. 4).   Accordingly, the claims and issues in Gates's
initial petition (Doc. 1) have not been considered by the undersigned.   *See* Rule 2(d) of the
Rules Governing Section 2254 Cases in the United States District Courts (a § 2254 habeas
"petition must substantially follow either the form appended to these rules or a form
prescribed by a local district-court rule.   The clerk must make the forms available to
petitioners without charge."); SD ALA LR 83.9(d)(1) (effective through July 31, 2015) ("All
pleadings filed by persons proceeding *pro se* shall be filed on forms provided by the court, or
in a form substantially conforming to such forms, unless otherwise ordered by the court.").

Governing § 2254 Cases in the United States District Courts, and S.D. Ala. GenLR 72(a)(2)(R).  Upon consideration, and for the reasons stated herein, the undersigned **RECOMMENDS** that Gates's superseding habeas petition (Doc. 4) be **DENIED** and that this action be **DISMISSED with prejudice**.  The undersigned further **RECOMMENDS** that Gates be found not entitled either to a Certificate of Appealability or to proceed *in forma pauperis* on appeal.

## I.   Background

Following a jury trial in the Circuit Court of Baldwin County, Alabama, Gates was found guilty of one count of first-degree manufacture of a controlled substance (methamphetamine) in violation of Ala. Code § 13A-12-218 (Baldwin Co. Circuit Ct. Case No. CC-09-2580).  (Doc. 9-1 at 5, 60; Doc. 9-3 at 1).  On November 18, 2010, the circuit court sentenced Gates to 25 years in prison and assessed various fines and costs.  (*Id.* at 67 – 69).  On May 13, 2011, the Alabama Court of Criminal Appeals affirmed the circuit court's judgment on direct appeal in an unpublished memorandum decision.  (Doc. 9-3); *Gates v. State*, No. CR–09–1814, 107 So. 3d 231 (Ala. Crim. App. 2011) (table).

Gates subsequently filed a petition for relief from conviction or sentence under Alabama Rule of Criminal Procedure 32.  After the State of Alabama filed an answer to the Rule 32 petition and an evidentiary hearing was held, the circuit court denied the petition on May 6, 2014.  (*See* Doc. 9-5).  Gates appealed, and the Court of Criminal Appeals affirmed the circuit court in an unpublished memorandum decision issued November 14, 2014.  (Doc. 9-8); CCA Case No. CR-13-

1192.  The Court of Criminal Appeals summarily overruled Gates's application for rehearing on February 6, 2015 (Doc. 9-10), and the Alabama Supreme Court summarily denied certiorari on April 10, 2015 (Doc. 9-12).[2]  On May 5, 2015 (the date Gates signed his initial petition) (*see* Doc. 1 at 19),[3] Gates initiated this action under § 2254 challenging his conviction.[4]

## II.    Claim for Relief

The sole claim for relief in Gates's operative habeas petition is that his trial counsel rendered ineffective assistance in violation of the Sixth Amendment of the United States Constitution by representing both him and a co-defendant in his criminal case and "plac[ing] the welfare of [his] co-defendant before [his.]"[5]  (Doc. 7 at 12).  The Respondent does not assert any procedural bar to the petition (e.g. failure to exhaust, statute of limitations) but argues that Gates's lone claim is due to be denied on the merits.  (*See* Doc. 9).

---

[2] Gates initiated his Rule 32 proceedings *pro* se but subsequently obtained counsel, W. Gregory Hughes, who represented Gates at his evidentiary hearing and at all stages of appeal.

[3] Under "the prison mailbox rule, … 'a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing.' "  *Daniels v. United States*, 809 F.3d 588, 589 (11th Cir. 2015) (per curiam) (quoting *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009)).  *See also* Rule 3(d) of the Rules Governing § 2254 Cases in the United States District Courts.  Courts "assume, '[a]bsent evidence to the contrary, ... that a prisoner delivered a filing to prison authorities on the date that he signed it.' "  Daniels, 809 F.3d at 589 (quoting *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014) (per curiam)).

[4] Because Gates challenges a conviction handed down by a state court within this judicial district, *see* 28 U.S.C. § 81(c), this Court has jurisdiction to entertain his habeas petition. *See* 28 U.S.C. § 2241(d).

[5] The undersigned abides by the directive that "courts should construe a habeas petition filed pro se more liberally than one drawn up by an attorney."  *E.g.*, *Gunn v. Newsome*, 881 F.2d 949, 961 (11th Cir. 1989).

### III.   Analysis

Because Gates's habeas petition was filed after April 24, 1996, it is subject to application of the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA").  *E.g.*, *Pope v. Sec'y for Dep't of Corr.*, 680 F.3d 1271, 1281 (11th Cir. 2012), *cert. denied*, 133 S. Ct. 1625 (2013).  "Under AEDPA, if a petitioner's claims have been 'adjudicated on the merits in State court,' a federal court cannot grant habeas relief unless the state court's adjudication of the claims (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' "  *Hittson v. GDCP Warden*, 759 F.3d 1210, 1230 (11th Cir. 2014) (quoting 28 U.S.C. § 2254(d)), *cert. denied*, 135 S. Ct. 2126 (2015).  "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires a state prisoner to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error beyond any possibility for fairminded disagreement.  If this standard is difficult to meet—and it is—that is because it was meant to be.  [Federal courts] will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy."  *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013) (internal citations and quotations omitted).  *See also Woods v. Donald*, -- U.S. --, 135 S. Ct. 1372, 1376   (2015) (per curiam) ("AEDPA's standard is intentionally ' " '

difficult to meet. ' " ' " (quoting *White v. Woodall*, 572 U.S. ——, ——, 134 S. Ct. 1697, 1702, 188 L. Ed. 2d 698 (2014) (quoting *Metrish v. Lancaster*, 569 U.S. ——, – ——, 133 S. Ct. 1781, 1786, 185 L. Ed. 2d 988 (2013)))).  The United States Supreme Court has

> explained that " 'clearly established Federal law' for purposes of §
> 2254(d)(1) includes only the holdings, as opposed to the dicta, of this
> Court's decisions." *White*, 572 U.S., at ——, 134 S. Ct., at 1702 (some
> internal quotation marks omitted). "And an 'unreasonable application
> of' those holdings must be objectively unreasonable, not merely wrong;
> even clear error will not suffice." *Id.*, at ——, 134 S. Ct., at 1702
> (same).  To satisfy this high bar, a habeas petitioner is required to
> "show that the state court's ruling on the claim being presented in
> federal court was so lacking in justification that there was an error
> well understood and comprehended in existing law beyond any
> possibility for fairminded disagreement." *Harrington v. Richter,* 562
> U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).
>
> Adherence to these principles serves important interests of federalism
> and comity. AEDPA's requirements reflect a "presumption that state
> courts know and follow the law." *Woodford v. Visciotti,* 537 U.S. 19, 24,
> 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002) (*per curiam*). When reviewing
> state criminal convictions on collateral review, federal judges are
> required to afford state courts due respect by overturning their
> decisions only when there could be no reasonable dispute that they
> were wrong.  Federal habeas review thus exists as "a guard against
> extreme malfunctions in the state criminal justice systems, not a
> substitute for ordinary error correction through appeal."  *Harrington,*
> *supra,* at 102–103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 135 S. Ct. at 1376.

> Finally, "AEDPA instructs that, when a federal habeas petitioner
> challenges the factual basis for a prior state-court decision rejecting a
> claim, the federal court may overturn the state court's decision only if
> it was 'based on an unreasonable determination of the facts in light of
> the evidence presented in the State court proceeding.' " *Burt v. Titlow,*
> ——U.S. ——, 134 S. Ct. 10, 15, 187 L. Ed. 2d 348 (2013) (quoting 28
> U.S.C. § 2254(d)(2)). In such cases, "[t]he prisoner bears the burden of
> rebutting the state court's factual findings 'by clear and convincing

evidence.' " *Id.* (quoting 28 U.S.C. § 2254(e)(1)). Like the "unreasonable application" standard in § 2254(d)(1), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen,* 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L. Ed. 2d 738 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question ... that does not suffice to supersede the [state] court's determination." *Id.* (alterations and quotation marks omitted).

*Hittson*, 759 F.3d at 1230.

Gates's sole claim for relief is one of ineffective assistance of counsel. The Sixth Amendment gives criminal defendants the right to effective assistance of counsel. U.S. Const., amend. VI; *Strickland v. Washington*, 466 U.S. 668 (1984). Normally, "[t]o establish an ineffective assistance of counsel claim, a defendant must show that (1) 'counsel's representation fell below an objective standard of reasonableness' and (2) that such failure prejudiced him in that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001) (per curiam) (quoting *Strickland*, 466 U.S. at 687-88, 694). Here, however, Gates's claim of ineffective assistance is based on an alleged conflict of interest, which warrants a "limited … presumption of prejudice." *Strickland*, 466 U.S. at 692.

If a trial court improperly requires joint representation of co-defendants over timely objection, reversal is automatic. *See Holloway v. Arkansas,* 435 U.S. 475, 487–90, 98 S. Ct. 1173, 1180–82, 55 L. Ed. 2d 426 (1978). In all other conflict situations, there is no Sixth Amendment violation, and thus no reversal, absent a showing that an actual conflict of interest adversely affected counsel's performance. *See*

*Mickens v. Taylor,* 535 U.S. 162, 167–174, 122 S. Ct. 1237, 1241–45, 152 L. Ed. 2d 291 (2002) ("Since this was not a case in which (as in *Holloway*) counsel protested his inability simultaneously to represent multiple defendants ... it was at least necessary, to void the conviction, for petitioner to establish that the conflict of interest adversely affected his counsel's performance."); *Strickland v. Washington,* 466 U.S. 668, 691, 104 S. Ct. 2052, 2067, 80 L. Ed. 2d 674 (1984) ("Prejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.' " (quoting *Cuyler v. Sullivan,* 446 U.S. 335, 348, 350, 100 S. Ct. 1708, 1718, 1719, 64 L. Ed. 2d 333 (1980))).

*Hunter v. Sec'y, Dep't of Corr.*, 395 F.3d 1196, 1200-01 (11th Cir. 2005).

Under this framework, the undersigned will address Gates's claim for habeas relief.

### A.   *Habeas Claim*

"As a rule, [federal courts] review 'the highest state court decision reaching the merits of a habeas petitioner's claim.' " *Holland v. Florida*, 775 F.3d 1294, 1308 (11th Cir. 2014) (quoting *Hittson*, 759 F.3d at 1231), *cert. denied*, 136 S. Ct. 536 (2015). Here, that decision is the Alabama Court of Criminal Appeals's November 14, 2014 memorandum opinion affirming the circuit court's denial of Rule 32 relief, [6] which addressed Gates's claim as follows:

---

[6]    "[T]here is no AEDPA requirement that a state court explain its reasons for rejecting a claim; 'Section 2254(d) applies even where there has been a summary denial.' " *Hittson*, 759 F.3d at 1232 (quoting *Cullen v. Pinholster*, 131 S. Ct. 1388, 1402, 179 L. Ed. 2d 557 (2011)). " 'When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.' " *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 99 (2011)). In light of *Richter*, the Eleventh Circuit has disavowed its prior practice, based on the pre-AEDPA decision of *Ylst v. Nunnemaker*, 501 U.S. 797 (1991), of "looking through" summary decisions by state appellate courts and reviewing, under § 2254(d), the last reasoned decision by a state court.

*Id.* at 1232 n.25.  Now, even where highest state court decision reaching the merits of a habeas claim was a summary denial, a federal court's task "is to review the record before [the highest state court reaching a decision on the merits] to 'determine what arguments or theories supported or … could have supported[] the state court's decision.' "  *Id.* at 1232 (quoting *Richter*, 562 U.S. at 102) (alterations added).  *Accord Jones v. GDCP Warden*, 753 F.3d 1171, 1182 (11th Cir. 2014).  While the issue of whether this Circuit's "look through" precedent has been abrogated is currently the subject of *en banc* review in another case, *see Jones v. GDCP Warden*, No. 11-14774, at 7-8 (11th Cir. Jan. 28, 2016) (published) (citing *Wilson v. Warden, Georgia Diagnostic Prison*, 774 F.3d 671 (11th Cir. 2014), *reh'g en banc granted, opinion vacated* (July 30, 2015)), it remains binding precedent unless and until the *en banc* Eleventh Circuit overrules it.  Regardless, the relevant state court decision is the same here under either test.

Certiorari review by the Alabama Supreme Court "is not a matter of right, but of judicial discretion."  Ala. R. App. P. 39(a).  *See also Pruitt v. Jones*, 348 F.3d 1355, 1359 (11th Cir. 2003) ("Alabama court rules provide for discretionary review in the Supreme Court of Alabama of decisions by the Alabama Court of Criminal Appeals." (citing Ala. R. App. P. 39(c)).  While a petition's "probability of merit" is part of the determination as to whether a writ of certiorari should issue, an affirmative finding as to this issue does not mandate the petition be granted.  *See* Ala. R. App. P. 39(a) ("A petition for a writ of certiorari will be granted only when there are special and important reasons for the issuance of the writ.") & (f) ("If the Supreme Court, upon preliminary consideration, concludes that there is a probability of merit in the petition **and** that the writ should issue, the Court shall so order…" (emphasis added)).  Thus, the Alabama Supreme Court's summary denial of certiorari review of Gates's Rule 32 petition cannot be presumed an adjudication of his claims on the merits.  *But see Hittson*, 759 F.3d at 1231-32 ("Georgia habeas petitioners are required to obtain a certificate of probable cause from the Georgia Supreme Court before appealing a superior court decision denying relief.  The standard for granting a CPC is set forth in Rule 36 of the Georgia Supreme Court Rules, which provides that '[a] certificate of probable cause to appeal a final judgment in a habeas corpus case involving a criminal conviction will be issued where there is arguable merit.' Ga. Sup.Ct. R. 36 (emphasis added) … [I]n denying Hittson's CPC applications to appeal the denial of his first and second habeas petitions, the [Georgia ]Supreme Court was not exercising discretionary review akin a denial of a petition for certiorari review.  Instead, the court was required to grant a CPC if it found arguable merit to any of the arguments in the application. In concluding that Hittson's claims lacked arguable merit, the Supreme Court had the benefit of the record from prior proceedings, the transcripts of the hearings held on his habeas petitions, and briefing on the merits of his constitutional claims. Such a standard clearly constitutes an adjudication on the merits for AEDPA purposes." (footnotes and some citations omitted)).

Similarly, the summary overruling of Gates's application for rehearing by the Court of Criminal Appeals cannot be considered an adjudication on the merits, as rehearing is also a discretionary decision for Alabama appellate courts that does not appear to turn solely on a determination of the merits of an application's claims.  *See* Ala. R. App. P. 40; *Saylor v. State*, 278 Ala. 297, 297 (1965); *Elliott v. State*, 768 So. 2d 422, 423-24 (Ala. Crim. App. 1999) ("Where a rehearing is not a matter of right, the petition or application amounts to merely a friendly suggestion to the court informing it of its oversight or errors.  The courts of this state have never explicitly held that a rehearing is a matter of right. However,

Gates argues that trial counsel, Christopher Salter, represented him while representing Kevan Matthews and that Matthews would have testified at Gates's trial that he, not Gates, manufactured the methamphetamine. According to Gates, Matthews would have informed the jury that although Gates was present during the manufacture of methamphetamine, he did not participate. Gates further asserts that because counsel represented Matthews, counsel failed to question Matthews about his involvement in the manufacturing of methamphetamine and failed to present Matthews's testimony.

…[7]

In support of his claim, Gates submitted an affidavit from Matthews. In his affidavit Matthews states:

> "My attorney was Chris Salter, who was also Todd Gates['s] attorney, in connection with the charges. Had I been called as a witness at Todd's trial, I would have testified that Todd Gates was not a meth cook, and that on the incident involved, I was the one cooking the meth. Todd Gates was merely present on that occasion."

At the evidentiary hearing, Salter testified that he represented Gates on the allegation that Gates manufactured methamphetamine. According to Salter, the methamphetamine was being manufactured in Gates's hut on Gates's property. Salter also testified that he represented Matthews in an unrelated methamphetamine case.

Salter testified that during discovery he was provided images from a video showing Gates using a bottle to make methamphetamine. A few days before trial, Salter was provided the video of the incident that led to Gates's charge.  In the video, although Matthews primarily handled

---

our courts have consistently treated a rehearing as a matter within the discretion of the court to which the application is addressed." (citation and quotation marks omitted)).

[7] The undersigned omits a block quotation of *Williams v. State*, 574 So. 2d 876, 877-78 (Ala. Crim. App. 1990), which itself block-quotes *Strickland*'s discussion of *Cuyler v. Sullivan*'s "limited presumption of prejudice" test for ineffective assistance claims involving conflicts of interest.  (Doc. 9-8 at $4-5$).

and shook the bottle to manufacture the methamphetamine, Gates also held and shook the bottle.

When asked by the State, Salter testified that his representation of Matthews on unrelated charges did not affect his representation of Gates.  Thereafter, Rule 32 counsel asked Salter:

> "And at that point, did any question come into your mind, like I represented Mr. Gates here, here is a potential witness that I'm also representing? Did that not ring a bell that maybe you need to look into this further?"

Salter responded:

> "At the time after I went all the way through the video and saw that Mr. Gates was in fact involved with the manufacturing process, no."

Salter also testified that both Gates and Matthews were charged in federal court with manufacturing methamphetamine for the incident in Gates's hut and both pleaded guilty.

Thereafter, the circuit court denied relief. In its order denying relief, the circuit court made the following findings:

> "Rule 32 hearing held 3/24/14. Defendant's Rule 32 is denied. Defendant's argument of Ineffective Assistance of Counsel is denied. Video and audio presented at trial shows the Defendant present and participating in the Manufacture of Meth and Defendant's conviction in Federal Court is on same charge."

The circuit court's findings are supported by the record.

Here, Salter denied that his representation of Matthews affected his representation of Gates.  Salter further testified that he did not interview Matthews for information that could aid Gates because he had seen evidence of Gates's participation in the manufacture of methamphetamine. Based on this testimony, this Court cannot say that Gates met his burden to show an actual conflict of interest adversely affected his counsel's representation.  Therefore, this Court cannot say that the circuit court abused its discretion by denying relief.

(Doc. 9-8 at 3 – 6 (citations and quotation omitted)).

Though Gates attached a copy of the Court of Criminal Appeals's memorandum opinion to his initial habeas petition (*see* Doc. 1 at 14 – 18), neither his initial petition nor his operative superseding petition provides any substantive discussion of how the Court of Criminal Appeals unreasonably applied either the facts or clearly established United States Supreme Court precedent to his claim. In his reply (Doc. 11) to the Respondent's answer, Gates cites three Alabama appellate court decisions that he claims his case is "indistinguishable from." Even assuming that this state-law authority is favorable to Gates's claim and that the Court of Criminal Appeals was bound to follow it, errors of state law do not warrant federal habeas relief. *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir. 1983) (per curiam) ("Questions of pure state law do not raise issues of constitutional dimension for federal habeas corpus purposes…A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."); *Jones v. GDCP Warden*, 753 F.3d 1171, 1191 (11th Cir. 2014) ("Because state courts are the ultimate expositors of state law, we are bound by state-court determinations on state-law questions."). On federal habeas review, the Court's only concern is whether state courts reasonably applied

"clearly established **Federal** law, as determined by the **Supreme Court of the United States**…" 28 U.S.C. § 2254(d)(1) (emphasis added).

Additionally, Gates's reply, devoted entirely to arguing that Salter labored under an actual conflict in representing him, fails to address the reason both the circuit court and the Court of Criminal Appeals rejected his claim – that, even assuming that Salter was under an actual conflict of interest, Gates had failed to show that the conflict adversely affected Salter's performance.  This determination is both legally and factually reasonable.

In *Sullivan*, the Supreme Court compared two of its prior decisions to illustrate how an actual conflict of interest could adversely affect counsel's performance in violation of the Sixth Amendment:

> In *Glasser v. United States*, [315 U.S. 60, 92, 62 S. Ct. 457, 475, 86 L. Ed. 680 (1942)], the record showed that defense counsel failed to cross-examine a prosecution witness whose testimony linked Glasser with the crime and failed to resist the presentation of arguably inadmissible evidence. *Id.*, at 72–75, 62 S. Ct. at 465–467. The Court found that both omissions resulted from counsel's desire to diminish the jury's perception of a codefendant's guilt. Indeed, the evidence of counsel's "struggle to serve two masters [could not] seriously be doubted." *Id.*, at 75, 62 S. Ct., at 467. Since this actual conflict of interest impaired Glasser's defense, the Court reversed his conviction.
>
> *Dukes v. Warden*, 406 U.S. 250, 92 S. Ct. 1551, 32 L. Ed. 2d 45 (1972), presented a contrasting situation. Dukes pleaded guilty on the advice of two lawyers, one of whom also represented Dukes' codefendants on an unrelated charge. Dukes later learned that this lawyer had sought leniency for the codefendants by arguing that their cooperation with the police induced Dukes to plead guilty. Dukes argued in this Court that his lawyer's conflict of interest had infected his plea. We found " 'nothing in the record . . . which would indicate that the alleged conflict resulted in ineffective assistance of counsel and did in fact render the

12

plea in question involuntary and unintelligent.' " *Id.*, at 256, 92 S. Ct., at 1554, quoting *Dukes v. Warden*, 161 Conn. 337, 344, 288 A.2d 58, 62 (1971). Since Dukes did not identify an actual lapse in representation, we affirmed the denial of the habeas corpus relief.

446 U.S. at 348-49.

Here, Gates claims that Salter's representation of Kevan Matthews caused Salter to refrain from questioning Matthews about the drug manufacturing incident underlying Gates's charge and from calling Matthews at trial as a witness, where he would have testified that Gates was not involved in cooking methamphetamine during the incident and was merely present while the cooking occurred. However, as was shown at the Rule 32 evidentiary hearing, Salter had good reason not to call Matthews to present such testimony, as it was directly contradicted by video evidence in possession of the prosecution. As Salter explained at the hearing, he made the decision not to interview Matthews after viewing the video because it showed "that Mr. Gates was in fact involved with the manufacturing process" with Matthews by handling and shaking a bottle. Thus, based on these factual findings, the Court of Criminal Appeals reasonably determined that Salter's failure to question or call Matthews did not impair Gates's defense.

Gates raises no challenge to the Court of Criminal Appeals's factual determinations, which this Court must presume correct in the absence of "clear and convincing evidence" to the contrary. *See Hunter*, 395 F.3d at 1200 ("Under [28 U.S.C. § 2254(e)(1)], state court factual determinations are presumed correct and a federal habeas petitioner is stuck with them unless he can rebut their presumed correctness with clear and convincing evidence to the contrary."). Gates has also

cited no United States Supreme Court precedent that the Alabama courts incorrectly or unreasonably applied; the undersigned has also found no such precedent.[8]  As such, the undersigned **RECOMMENDS** that Gates's superseding habeas petition (Doc. 4) be **DENIED** and this action **DISMISSED with prejudice**.[9]

## B.    *Certificate of Appealability*

In actions, such as this one, brought under § 2254, a "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  "A certificate of appealability may issue 'only if the applicant has made a substantial showing of the denial of a constitutional right.' " *Spencer v. United States*, 773 F.3d 1132, 1137 (11th Cir. 2014) (en banc) (quoting 28 U.S.C. § 2253(c)(2)).  However, "a COA does not require a showing that the appeal will succeed."  *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Where, as here, the district court "has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The

---

[8] Liberally construing Gates's reply, Gates appears to assert that Salter's failure to inform Gates of the conflict of interest, thus depriving Gates of the chance to decide whether to waive the conflict or insist on new counsel, is itself ineffective assistance.  Supreme Court precedent is clear, however, that "*Holloway* []creates an automatic reversal rule only where defense counsel is forced to represent codefendants over his timely objection…"  *Mickens v. Taylor*, 535 U.S. 162, 168 (2002).  It is undisputed that this did not occur; thus, it is "at least necessary, to void the conviction, for [Gates] to establish that the conflict of interest adversely affected his counsel's performance."  *Id.* at 174.  The Alabama courts determined that Gates had not, and Gates has failed to meet his heavy burden on federal habeas review of showing that this decision should be overturned.

[9] In accordance with Rule 8(a) of the Rules Governing Section 2254 Cases, the undersigned, having considered the Respondent' answer and the records of the state court proceedings, finds that an evidentiary hearing is not warranted before dismissing Gates's petition.

petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). *See also Miller-El*, 537 U.S. at 336 ("Under the controlling standard, a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." (citations omitted and punctuation modified)).). "A prisoner seeking a COA must prove something more than the absence of frivolity or the existence of mere good faith on his or her part." *Miller-El*, 537 U.S. at 338 (quotations omitted). Upon consideration, the undersigned **RECOMMENDS** that a certificate of appealability in this action be **DENIED**. Gates has not made a substantial showing of the denial of a constitutional right, and he has presented no constitutional claim for which "reasonable jurists would find [this] court's assessment…debatable or wrong." *Slack*, 529 U.S. at 484.

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by the petitioner, he may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *See, e.g., Brightwell v. Patterson*, No. CA 11-0165-WS-C, 2011 WL 1930676, at *6 (S.D. Ala. Apr. 11, 2011), *report & recommendation*

*adopted*, 2011 WL 1930662 (S.D. Ala. May 19, 2011)[10]; *Griffin v. DeRosa*, No. 3:10cv342/RV/MD, 2010 WL 3943702, at *4 (N.D. Fla. Sep. 20, 2010) (providing for same procedure), *report & recommendation adopted sub nom. Griffin v. Butterworth*, 2010 W: 3943699 (N.D. Oct. 5, 2010).[11]

### C.   *Appeal In Forma Pauperis*

"An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith."  28 U.S.C.A. § 1915(a)(3).  A district court's finding "that an appeal would not be in good faith because no certificate of appealability had been issued . . . is not enough to explain why the appeal on the merits would not be in good faith, because the standard governing the issuance of a certificate of appealability is not the same as the standard for determining whether an appeal is in good faith. It is more demanding . . . [T]o determine that an appeal is in good faith, a court need only find that a reasonable person could suppose that the appeal has some merit."  *Walker v. O'Brien*, 216 F.3d 626, 631-32 (7th Cir. 2000). *See also Weaver v. Patterson*, Civ. A. No. 11-00152-WS-N, 2012 WL 2568218, at *7 (S.D. Ala. June 19, 2012) (Nelson, M.J.), *report and recommendation adopted*, Civ. A. No. 11-00152-WS-N, 2012 WL 2568093 (S.D. Ala. July 3, 2012) (Steele, C.J.) ("An appeal may not be taken *in forma pauperis* if the trial court certifies in writing that

---

[10] It should be noted that in that proceeding, the Eleventh Circuit (Judge Hull) also denied the petitioner's motion for certificate of appealability on October 11, 2011.  (*See* Doc. 14 in CA-11-0165-WS-C.).

[11] Should the Court adopt this recommendation and deny a certificate of appealability, the petitioner "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22."  Rule 11(a) of the Rules Governing § 2254 Cases in the United States District Courts.

the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); *see* Fed. R. App. P. 24(a)(3)(A); *Lee v. Clinton*, 209 F.3d 1025, 1026 (7th Cir. 2000) (concluding that 'good faith' is 'an objective concept' and that 'not taken in good faith' is 'a synonym for frivolous'); *DeSantis v. United Techs, Corp.*, 15 F. Supp. 2d 1285, 1288–89 (M.D. Fla. 1998) (stating that good faith 'must be judged by an objective, not a subjective, standard' and that an appellant 'demonstrates good faith when he seeks appellate review of any issue that is not frivolous'). An appeal filed *in forma pauperis* is frivolous if 'it appears that the Plaintiff has little to no chance of success,' meaning that the 'factual allegations are clearly baseless or that the legal theories are indisputably meritless.' *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993)."). *But see, e.g., United States v. McCray*, No. 4:07CR20-RH, 2012 WL 1155471, at *2 (N.D. Fla. Apr. 5, 2012) ("Because the defendant has not obtained—and is not entitled to—a certificate of appealability, any appeal by the defendant will not be taken in good faith. I certify under Federal Rule of Appellate Procedure 24(a) that any appeal will not be taken in good faith and that the defendant is not otherwise entitled to proceed *in forma pauperis* on appeal.").

Considering the foregoing analysis, the undersigned **RECOMMENDS** the Court certify that any appeal by Gates in this action would be without merit and therefore not taken in good faith and, accordingly, find that Gates is not entitled to appeal *in forma pauperis*.

## IV.    Conclusion

In accordance with the foregoing analysis, it is **RECOMMENDED** that

17

Gates's superseding habeas petition (Doc. 4) be **DENIED**, that this action be **DISMISSED with prejudice**, that judgment be entered in favor of the Respondent, and that the Court find Gates is not entitled to either a certificate of appealability or to appeal *in forma pauperis*.

## V.   <u>Notice of Right to File Objections</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law.   Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.   *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P 72(b); S.D. Ala. GenLR 72(c).   The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.   In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that

merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 17th day of February 2016.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**